## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| HBJD Corporation<br>c/o E&S Registered Agent, LLC<br>One SeaGate, 24th Floor<br>Toledo, Ohio 43604<br><br>        Plaintiff,<br><br>vs.<br><br>Sean Lechner<br>3175 Yargerville Road<br>Lasalle, Michigan 48145<br><br>        Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 21-12120<br><br>Hon. _____<br><br>**COMPLAINT**<br><br>Mark W. Sandretto (P74007)<br>Charles E. Hatch (P84220)<br>EASTMAN & SMITH LTD.<br>One SeaGate, 24th Floor<br>P.O. Box 10032<br>Toledo, Ohio 43699-0032<br>Telephone: (419) 241-6000<br>Fax: (419) 247-1777<br>E-mail: mwsandretto@eastmansmith.com<br>                cehatch@eastmansmith.com<br><br>Attorneys for Plaintiff<br>HBJD Corporation |

For its Complaint against Defendant Sean Lechner ("**Defendan**t"), Plaintiff HBJD Corporation ("**HBJD**") states as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. HBJD is an Ohio corporation with its principal place of business in Lucas County, Ohio.

2. Defendant Sean Lechner is an individual who resides and is domiciled in Monroe County, Michigan.

3. There is complete diversity among the parties and the amount in controversy exceeds $75,000.00 and, therefore, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

## STATEMENT OF THE CASE

4. This case involves a clear breach of contract by Defendant, in which Defendant has received and taken up residency of a custom home and refuses to pay HDJD for it. HBJD substantially performed its duties under a building contract between it and Defendant, completing construction of the custom home following the date of commencement in approximately eight and a half months, which is extraordinary considering the home has approximately 4,000 square feet of finished space and finishes of the home, despite the Defendants requesting numerous change orders after the commencement date, and despite operating in an unprecedented environment driven by COVID-19 and significant supply chain and labor shortage challenges. Photos of the beautiful, completed, custom home are attached hereto as ***Exhibit 1***. Defendant agreed upon a final "punch list" of incomplete work. HBJD made at least a dozen trips to the Residence to inspect and complete the "punch list" items; however, Defendant continually identifies additional items to add to the list. In fact, even within week prior to the instant filing, HBJD learned that Defendant identified completely new items that Defendant never previously raised with HBJD. In the interim, Defendant took possession of the custom home built for him by HBJD without authorization, has lived in it for over two and a half months, and continues his refusal to pay the contract price in full. HBJD has gone above and beyond its obligations under the contract, has exhausted its efforts

and ability to satisfy Defendant, and is left with no choice but to petition this Court for appropriate redress.

## FACTS COMMON TO ALL CAUSES OF ACTION

5. Plaintiff incorporates by reference the allegations contained in paragraph 1 through 4, above, as if fully restated herein.

6. HBJD entered into a Home Construction Contract with Defendant on July 24, 2020 for the construction of a single-family residence (the "**Contract**") located at 3175 Yargerville Road, Lasalle, Monroe County, Michigan ("**Residence**") for a total project sum of Five Hundred Forty-Five Thousand Three Hundred Eighty-Eight Dollars and Zero Cents ($545,388.00). A true and accurate copy of the Contract is attached hereto as *Exhibit 2*.

7. HBJD commenced construction on October 1, 2020, and substantially performed under the Contract, substantially completing construction of the Residence on or about June 17, 2021.

8. On or about June 3, 2021, HBJD submitted a final draw request to Defendant's lender in the amount of $105,482.68 for satisfaction of the final draw payment and satisfaction of the total Contract Price.

9. On or about June 11, 2021 Defendant's lender completed a final draw inspection of the Residence and approved the same.

10. Despite the lender completing inspection and subsequently approving the residence for final payment, Defendant has failed and refused to authorize the lender to pay the final draw in payment and satisfaction of the full Contract price.

11. On or about June 17, 2021 a Certificate of Occupancy for the Residence was approved and was subsequently issued on July 21, 2021.

12. HBJD met with Defendant at the Residence to create a final "punch list" on June 17, 2021. The "punch list" was agreed to and signed by all parties.

13. On June 17, 2021, Defendant approved all final change orders from the original Contract in the amount of $8,782.26. A true and accurate summary of the approved change orders are attached hereto as ***Exhibit 3***.

14. Despite Defendant's refusal to authorize the final draw payment, and prior to HBJD completing the final "punch list" items, Defendant moved personal property into the Residence and now occupies the same.

15. On June 22, 2021, HBJD's subcontractors arrived at the Residence to mop the Defendant's unfinished basement space at the Defendant's request, despite this request being above and beyond the requirement of ensuring the completed residence is "broom clean" and discovered personal property stored inside the Residence prior to full payment of the Contract Price and without the express authorization of HBJD.

16. On June 30, 2021, HBJD employees arrived at the Residence to further complete punch list items. Upon said visit, HBJD found Defendant's furniture inside the Residence and it appeared that Defendant had occupied the same without the express authorization of HBJD.

17. On July 20, 2021, an HBJD representative met with Defendant at the Residence, at which time Defendant provided additional "punch items" and demanded completion of the same. At this meeting, the HBJD representative observed Defendant and his family eating breakfast in the Residence kitchen, further confirming Defendant's occupancy of the Residence without the express authorization of HBJD.

18. On July 29, 2021, despite Defendant's continuing refusal to make payment of the final Contract Price, HBJD mobilized all of its various trade subcontractors and employees to

spend an entire day at the Residence, performing the original final "punch list" and additional "punch list" items that Defendant identified.

19. HBJD has continued to act in good faith and has attempted to satisfy Defendant and rectify all issues outlined in the final agreed upon "punch list" and Defendant's subsequent "punch list" items, sending representatives of HBJD to the Residence no less than twelve times between the completion of the final punch list and mid-August.

20. Despite Defendant's occupancy of the Residence and the parties' agreement on a final "punch list", Defendant continues to include items on the "punch list" which far exceeds the time frame expressly provided for in the Contract.

21. Despite HBJD's continued good faith dealings with Defendant, Defendant has refused to authorize the final draw payment to satisfy the full Contract Price.

## **COUNT I – BREACH OF CONTRACT**

22. Plaintiff incorporates by reference the allegations contained in paragraph 1 through 21 as if fully restated herein.

23. HBJD entered into a Contract with Defendant on July 24, 2020 for the construction of the Residence for a total project sum amount of Five Hundred Forty-Five Thousand Three Hundred Eighty-Eight Dollars and Zero Cents ($545,388.00). *See **Exhibit 2***.

24. HBJD substantially performed under the Contract by constructing the Residence in accordance with the Contract and specifications agreed upon by the Parties.

25. Pursuant to Section 8.1 of the Contract, HBJD issued via Defendant's lender a final draw request in the amount of $105,482.68 in June 2021.

26. As a result of approved Change Orders, the final draw under the Contract owing to HBJD is appropriately increased by $8,782.26 and, accordingly, Defendants owe HBJD the

outstanding sum amount of $114,264.94. True and accurate summaries of approved Change Orders are attached hereto as *Exhibit 3*.

27. Despite Defendant's lender completing its final inspection and approving the same, Defendant has failed to authorize his lender to make final payment in violation of Section 8.1 of the Contract.

28. In addition, Defendant took possession of and occupied the Residence, and continues to occupy the Residence, prior to issuing full payment of the Contract price and Change Orders, violating Section 5, Section 9, and Section 13.4 of the Contract.

29. In its letter dated September 2, 2021, HBJD demanded payment of the $114,264.94 amount due under the Contract. A true and accurate copy of the demand letter is attached hereto as *Exhibit 4.*

30. Despite HBJD's demand, Defendant has failed and refuses to pay the amount due under the Contract.

31. HBJD has suffered damages in the amount of at least $114,264.94 as a result of Defendant's breaches of the Contract, including his failure to pay the amounts due under the Contract.

## COUNT II – PROMISSORY ESTOPPEL

32. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 above, as if fully restated herein.

33. HBJD hereby brings this claim under Fed.R.Civ.P. 8(d) and/or MCR 2.111(A)(2)(a) in the alternative to its claim for breach of contract.

34. On July 24, 2020, Defendant agreed to compensate HBJD in the amount of $545,388.00 for HBJD's services in constructing the Residence.

35. Defendant should have reasonably expected that his promise of compensation would induce HBJD to construct the Residence.

36. HBJD reasonably relied upon Defendant's representations of compensation which, in fact, induced HBJD to construct the Residence.

37. HBJD, in reasonable reliance upon Defendant's representations, substantially performed and completed the construction of the Residence in June 2021.

38. Defendant failed to compensate HBJD for the full amount originally promised.

39. Defendant unjustly occupied the Residence, despite his failure to fully compensate HBJD.

40. HBJD has suffered damages in the amount of at least $114,264.94 as a result of Defendant's failure to pay the amounts promised to HBJD.

## COUNT III – UNJUST ENRICHMENT

41. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40, above, as if fully restated herein.

42. On July 24, 2020, Defendant agreed to compensate HBJD in the amount of $545,388.00 for HBJD's services in constructing the Residence.

43. HBJD, in reasonable reliance upon Defendant's representations, substantially performed and completed the construction of the Residence in June 2021.

44. Defendant has failed to compensate HBJD for the full amount originally promised.

45. Defendant has unjustly occupied the Residence despite his continued failure to fully compensate HBJD.

46. Defendant has retained the benefit of occupying the Residence, constructed by HBJD, while retaining the outstanding amount owed in the amount of at least $114,264.94.

47. Defendant has been unjustly enriched as a result of occupying the Residence while he continues to retain the outstanding amount owed to HBJD in the amount of at least $114,264.94.

48. Defendant's unjust enrichment has caused substantial inequity to HBJD.

## **COUNT IV – DECLARATORY JUDGMENT**

49. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48, above, as if fully restated herein.

50. Pursuant to Section 13.4 of the Contract, Defendant was bound to the following provisions pertaining to the completion and inspection of the Residence:

> 13.4. NOTICE OF COMPLETION AND INSPECTION PROCESS. The Contractor shall communicate a notice to the Owner in writing or electronically upon completion of the New Home (the "Completion Notice"). The Owner shall have seven (7) days from receipt of the Completion Notice to inspect the New Home for incomplete Work and/or defects and ten (10) days from receipt of the Completion Notice to deliver to the Contractor a written list of all incomplete Work and/or defects that must be corrected before the Owner will accept the New Home. Upon receipt of such list the Contractor will confer with the Owner and the parties shall agree upon a punch list that must be signed by both parties. There will be no deductions, set offs or escrows from the Contract Price or other sums owed to the Contractor pursuant to this Contract for any items on the agreed upon punch list. The Owner may not take possession of and commence occupancy of the New Home prior to completion of the punch list without the Contractor's express written authorization. Failure of the Owner to deliver to the Contractor a list of incomplete Work and/or defects within ten (10) days from receipt of the Completion Notice will constitute approval the Work and acceptance of the New Home as fully completed. Omission from the list of any incomplete Work, apparent defects or defects that should be apparent on reasonable inspection will constitute acceptance of Work and the New Home with those defects. On correction of timely listed defects and completion of any incomplete Work to the reasonable satisfaction of the Owner, will constitute final completion of the new home.

51. HBJD complied with Section 13.4 of the Contract and communicated to Defendant that construction of the Residence was completed.

52. On June 17, 2021, the parties met and agreed upon a final "punch list" of incomplete work and/or defects to be corrected, which was signed and agreed to among the parties.

53. Defendant has since taken possession of and has commenced occupancy of the Residence prior to completion of the agreed upon "punch list" and without the express written authorization of HBJD, and without full payment of the Contract Price, contrary to Section 13.4 of the Contract.

8

54. Pursuant to Section 13.4 of the Contract, Defendant's failure to provide HBJD with a completed written list of incomplete work and/or defects within ten (10) days of HBJD's notice of completion constitutes Defendant's approval and acceptance of the Residence subject only to those items set forth on the final "punch list" agreed upon by the parties on June 17, 2021.

55. In addition to Defendant's breach of Section 13.4 of the Contract, Defendant breached Section 9.3 of the Contract, which provides:

> 9.3. MOVE-IN AND OCCUPANCY. Both the Contractor and the Owner agree that occupancy and possession of the New Home shall be given to the Owner only upon payment of the total Contract Price pursuant to Paragraphs 2 and 8, along with all amounts due to the Contractor for all changes or additions as provided in Paragraph 5. Occupancy of the New Home by the Owner prior to the payment in full to the Contractor as aforesaid shall constitute complete acceptance by the Owner, without any further obligation on the part of the Contractor to give the warranty provided for in Paragraph 17 hereof, except that the Owner and the Contractor may agree to earlier occupancy pursuant to Paragraph 20 hereof.

56. Defendant occupied and/or has moved personal property into the Residence prior to providing HBJD with the total Contract Price, despite HBJD's final draw request.

57. Defendant occupied and/or has moved personal property into the Residence without HBJD's express authorization.

58. In accordance with the express terms of Section 9.3 of the Contract, Defendant's possession and occupation of the Residence without making full payment of the Contract Price, "constitute[s] complete acceptance" of the Residence by Owner.

59. Despite Defendant's acceptance of the Residence pursuant to the express terms of the Contract, HBJD has continued in good faith to coordinate inspection and/or completion of Defendant's "punch list" items with HBJD's representatives returning to the Residence on at least twelve (12) occasions since Defendant's refusal to pay the Contract Price.

60. Defendant has continued to provide HBJD with "punch list" items outside of the time frame expressly provided for and outlined in the Contract.

61. Although Defendant has provided punch list items outside of the time frame provided for in the Contract, HBJD has continued to complete said "punch list" items in good faith.

62. There is an actual controversy among the parties regarding their rights and obligations under the Contract and HBJD is entitled to an Order declaring that:

    a. Defendant was required to submit a complete list of all incomplete work and/or defects to HBJD in accordance with Section 13.4 of the Contract;

    b. Defendant was not entitled to occupy the Residence without payment of the amounts due under the Contract;

    c. Defendant's occupancy of the Residence prior to paying the total Contract Price constitutes Defendant's complete acceptance of the Residence; and

    d. HBJD is relieved of any obligation to provide the warranty specified in Paragraph 17 of the Contract as a result of Defendant's breach of Section 9.3.

### COUNT V – BREACH OF CONTRACT
### (Breach of Non-Disparagement Agreement, Liquidated Damages)

63. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 62, above, as if fully restated herein.

64. Pursuant to Section 15 of the Contract, Defendant was subject to a non-disparagement agreement in which Defendant agreed to refrain from making disparaging statements about HBJD that "defame, harm, disparage, or otherwise adversely affect the reputation" of HBJD.

65. After Defendant entered into the Contract and the accompanying non-disparagement agreement, Defendant made negative and disparaging comments on a social media

platform which was accessible to the public view. Upon information and belief, Defendant has made other negative and disparaging comments directly to existing and prospective customers of HBJD.

66. Pursuant to Section 15 of the Contract, the parties agreed that any violations of the non-disparagement agreement would result in $5,000.00 per violation of said provision.

67. Defendant violated Section 15 of the Contract when he communicated negative and disparaging statements that had a defamatory, harmful, or disparaging effect upon HBJD's reputation.

68. As a result of Defendant's breach of the Contract, HBJD is entitled to said liquidated damages in the amount of $5,000.00 per violation of Section 15 of the Contract.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in its favor and against Defendant as follows:

i. For compensatory damages in an amount exceeding $75,000.00;
ii. For a judgment declaring and decreeing that:
   a. Defendant's failure to provide HBJD with a completed written list of incomplete work and/or defects within ten (10) days following his receipt of communication that construction was complete constitutes Defendant's approval and acceptance of the Residence as fully completed;
   b. Defendant's occupancy of the Residence prior to paying the total Contract Price constitutes Defendant's complete acceptance of the work specified under the Contract; and
   c. HBJD is relieved of any further obligation under the warranty provided for in Paragraph 17 of the Contract;
iii. For pre-judgment interest and post-judgment interest, along with the costs, expenses, and reasonable attorneys' fees incurred herein; and
iv. For such other and further relief as the Court deems just and equitable.

        Respectfully submitted,

        EASTMAN & SMITH LTD.

        /s/ *Mark W. Sandretto*

        Mark W. Sandretto (P74007)
        Charles E. Hatch (P84220)
        One SeaGate, 24th Floor
        P.O. Box 10032
        Toledo, Ohio 43699-0032
        Telephone:  (419) 241-6000
        Fax: (419) 247-1777
        E-mail:  mwsandretto@eastmansmith.com
                cehatch@eastmansmith.com

        Attorneys for Plaintiff
        HBJD Corporation

5824251.5